IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CONRAD P. LEE, et al., | ) |
| Plaintiffs, | ) |
| v. | ) No. 02 C 3087 |
| DELOITTE & TOUCHE LLP, et al., | ) Judge Mark Filip |
| Defendants. | ) |

MEMORANDUM OPINION AND ORDER

This is a multi-party, consolidated action in which one of the plaintiffs, Moses Cheung ("Plaintiff" or "Cheung"), has alleged that he was fraudulently induced into participating in an unsuccessful business transaction—specifically, a "roll-up" of several companies into a larger corporate entity.[1] (D.E. 12 in Case 02-3088 at 2.) Defendant Deloitte & Touche ("Defendant" or "Deloitte") moves to dismiss Cheung's claims with prejudice for want of prosecution. (D.E. 94.) Plaintiff responded to Defendant's motion by suggesting that the case should be dismissed without prejudice for lack of subject matter jurisdiction. (D.E. 104.) For the reasons stated below, the Court concludes that Plaintiff's suggestion that the Court lacks subject matter jurisdiction is incorrect, and thus the Court declines to dismiss the case pursuant to Fed. R. Civ P. 12(h)(3). (*Id.*) As also explained below, although the Court likely would be within its discretionary authority to dismiss the case with prejudice for want of prosecution, the Court will afford Plaintiff one last chance to initiate an arbitration, as he indicated he would long ago. (*See, e.g.,*

---

[1] Docket entries in Case 02-3087 are designated as "D.E. ___," followed by the appropriate district court docket number. Docket entries prior to the consolidation are designated as "D.E. ____ in Case ___."

D.E. 103, Ex. A.) If such an arbitration is not initiated within twenty-one days of this order, the case will be dismissed with prejudice for want of prosecution.

## BACKGROUND

In this consolidated case, the complaints, including Mr. Cheung's, allege a fraud scheme conducted by Deloitte, and others acting in concert, to form and operate a company called EPS Solutions Corp. ("EPS").[2] (D.E. 12 in Case 02-3088 at 1-2.) Plaintiff alleges that Deloitte and others misled investors regarding the financial condition of many of the rolled-up companies in order to attract investments. (*Id.* at 10-11.) EPS ultimately collapsed, allegedly because the roll-up included a number of companies that were not economically viable. (*Id.* at 22.[3])

On April 18, 2002, Cheung filed a petition for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the District of New Jersey. (D.E. 106, Ex. A.) Cheung did not disclose any potential claims relating to the EPS roll-up to the trustee or to the bankruptcy court. (D.E. 104 at 1-2.)

On April 30, 2002, Cheung filed a seven-count complaint in the Northern District of Illinois; he subsequently filed an amended complaint containing similar allegations.[4]

---

[2] A more detailed account of the underlying litigation is available in *Hoffman v. Deloitte & Touche, LLP*, 143 F. Supp. 2d 995 (N.D. Ill. 2001) (Gettleman, J.).

[3] The Court obviously takes no position as to the truth or falsity of the allegations. The Court notes, however, that the allegations were, as discussed further below, the subject of a prior arbitration by the other Plaintiffs in this case. At the end of twenty-eight days of hearings and testimony, which included the presentation of testimony, either live or via deposition, from almost sixty witnesses, the three-member arbitration tribunal rejected all of the allegations and ruled for Deloitte as to every claim. *See* D.E. 103, Ex. B at 2-3, 10.

[4] Cheung sued individually and/or as successor in interest or assignee of MKC Enterprises, Inc., formerly known as The Oxxford Group, Inc. (D.E. 12 in Case 02-3088

(D.E. 1, 12 in Case 02-3088.) Cheung did not notify the Bankruptcy Court of his claim nor did he notify his attorney, Edward Joyce ("Joyce") of the law firm Edward T. Joyce & Associates, P.C. ("Joyce Firm"), that he had recently filed for Chapter 7 protection. (D.E. 104 at 1-2.)

In July and October 2002, Judge Gettleman, who was then presiding over the case, granted Defendants' motions to stay the claims of Moses Cheung and other Plaintiffs and to compel arbitration of those claims. (D.E. 22, 42.) Cheung moved for reconsideration on the grounds that arbitration would be too costly, but Judge Gettleman denied his motion. (D.E. 26 in Case 02-3088.)

Albert Russo ("Russo") was appointed by the New Jersey Bankruptcy Court to serve as the trustee for Cheung's estate. (D.E. 106, Ex. A.) Russo discovered Cheung's omission regarding the Illinois claim at some point in 2003. (*Id.* at 3.) Russo then allegedly took steps to take control of the claim that properly belonged to the bankruptcy estate, although he never moved to substitute the estate as the real party of interest. (*Id.*) On December 24, 2003, Russo notified the New Jersey Bankruptcy Court of Cheung's suit, "which may result in a recovery to the estate." (D.E. 103, Ex. D ¶ 2.)

Russo also requested authorization from the bankruptcy court to retain the Joyce Firm as special counsel to represent the estate in the prosecution of the action. (*Id.*, Ex. D ¶ 4.) In support of Russo's request, Joyce provided an affidavit to the New Jersey Bankruptcy Court representing that any future representation by the Joyce Firm with respect to Cheung's suit would be on behalf of the trustee, not Cheung. (D.E. 106, Ex. B.) On January 5, 2004, the bankruptcy court granted the motion to retain the Joyce Firm

at 1.)

as special counsel and to approve the contingent fee compensation arrangement. (*Id.*, Ex. C.)

In April 2003, all of the Plaintiffs save for Cheung submitted their disputes with numerous Defendants, including Deloitte, to binding arbitration. (*Id.*, Ex D ¶ 3.) These arbitrating Plaintiffs (which did not include Mr. Cheung) and two of the Defendants (Jeffries and Weinhuff) reached a settlement prior to the completion of the arbitration. (*Id.* ¶ 5.) Cheung's bankruptcy estate received a share of the settlement proceeds and the Joyce Firm was paid a contingency fee for its work on the matter. (*Id.* at 4; *see also id.*, Ex. F at 3-5.) The arbitration process also proceeded: the hearing lasted twenty-eight days, with the parties presenting some sixty witnesses, including expert witnesses, either live or via deposition testimony. (D.E. 103, Ex. B at 2-3.) Almost 1,200 exhibits were received in evidence, and the parties submitted post-hearing briefs to the three-member arbitration panel, which also heard arguments. (*Id.*, Ex. B at 3.) At the conclusion of the arbitration, the arbitration panel ruled, in a ten-page single-spaced written ruling, that the Plaintiffs had failed to prove any of their allegations and that "[a]ll claims for relief of all claimants are . . . DENIED." (*Id.*, Ex. B at 10 (ruling of December 2005).)

In March 2004, before the arbitration had convened, this case was reassigned to this Court. (D.E. 33.) On March 22, 2004, the parties filed a joint status report. (D.E. 103, Ex. A.) The joint status report stated that Cheung had "not yet filed [his] demand for arbitration before JAMS because ownership of the claim [had] not yet been resolved by the bankruptcy court." (*Id.* ¶ 2.) The joint status report further provided that "resolution [of the ownership issue] is expected within the next 30 days [*i.e.*, in April 2004], at which time an arbitration will be filed"—"most likely by the bankruptcy

4

trustee." (*Id.*) However, neither Cheung nor the trustee filed an arbitration demand in the ensuing 30 days, nor in the ensuing years (D.E. 106, Ex. D ¶ 4); indeed, Plaintiff has not even offered to file an arbitration demand now.

On February 28, 2005, Mr. Russo, the bankruptcy trustee, notified the bankruptcy court that "the [bankruptcy] case remains open because of a federal arbitration case in the Federal District Court in Chicago" and that he was in frequent contact with Mr. Joyce. (*Id.*, Ex. G.) In a May 31, 2005 letter to the Bankruptcy Court regarding the remaining claim against Deloitte, Mr. Russo stated that he "anticipate[s] that Mr. Joyce will either negotiate a settlement or commence the appropriate [arbitration] within the next 60 days." (*Id.*, Ex. H.) However, no arbitration claim was ever filed by the Cheung estate against Deloitte. (*Id.*, Ex. A ¶ 2; *id.*, Ex. H; D.E. 103 at 2.)

The final award of the arbitration tribunal and its statement of reasons, which denied all of the Plaintiffs' claims (save for Mr. Cheung, who did not file any arbitration demand) was entered in December 2005 (D.E. 103, Ex. B at 10); this Court confirmed the award in January 2006. (D.E. 99.)

DISCUSSION

Deloitte has moved to dismiss Cheung's case with prejudice for want of prosecution. (D.E. 94.) In response to Deloitte's motion, Cheung has argued that he did not have standing to sue when he filed the action in April 2002, and thus the Court should dismiss the action for lack of subject matter jurisdiction. (D.E. 104 at 1.) In accordance with precedent, the Court considers the subject matter jurisdiction issue prior to other issues. *See, e.g., Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 93-94 (1998).

5

I.      Standing to Sue

Plaintiff maintains that he does not have standing to sue because he filed for Chapter 7 protection after his cause of action accrued, and thus the asserted cause of action is the property of his bankruptcy estate. (D.E. 104 at 1.) Plaintiff further argues that, because he lacked standing when he filed suit, the Court lacks subject matter jurisdiction over the suit. (*Id.* at 3.)

Standing generally has two aspects—constitutional (Article III) standing and prudential considerations of standing, which involve judicially self-imposed limits on the exercise of federal jurisdiction. *See, e.g., Warth v. Seldin,* 422 U.S. 490, 498-499 (1975). Precedent instructs that "the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). Specifically, Article III standing is comprised of three elements: (1) injury in fact; (2) causation; and (3) redressability. *See id.* at 560-61. Because issues of Article III standing relate to a court's subject matter jurisdiction over a matter, they must be addressed whenever they are present. *See, e.g., Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 541-542 (1986).

An "injury in fact" is a harm suffered by the plaintiff that is "concrete" and "actual" or "imminent," as opposed to "conjectural" or "hypothetical." *See, e.g., Lujan,* 504 U.S. at 560 (collecting cases; internal quotation marks and citations omitted). The Amended Complaint states that Plaintiff suffered extensive financial losses from Defendant's allegedly fraudulent scheme. (D.E. 12 in Case 02-3088 at 25, 31-36, 38-39.) These alleged injuries are undoubtedly concrete for Article III purposes. *See, e.g., Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.,* 219 F.3d 895, 900

6

(9th Cir. 2000) ("injury in fact" requirement satisfied when insurer's failure to defend allegedly resulted in plaintiffs' filing for bankruptcy). Likewise, the causation requirement is satisfied because the Amended Complaint describes a direct relationship between Defendant's alleged conduct and Plaintiff's alleged injuries. *Lujan*, 504 U.S. at 560; D.E. 12 in Case 02-3088 at 5-6, 31-36, 38-39. The alleged injury is also redressable by the requested relief because money damages would compensate Plaintiff for his financial losses. *See Pershing Park Villas Homeowners Ass'n*, 219 F.3d at 900.[5] The question of whether Plaintiff could actually obtain damages, *i.e.*, whether he has a valid cause of action, is immaterial to the Article III inquiry. *See, e.g., Bd. of Educ. of Oak Park & River Forest H.S. Dist. No. 200 v. Kelly E.*, 207 F.3d 931, 934 (7th Cir. 1999) (rejecting a standing challenge and noting that "a party's failure to establish a claim for relief differs from a deficiency in subject-matter jurisdiction") (collecting cases); *see also Pershing Park Villas Homeowners Ass'n*, 219 F.3d at 900 ("[N]or can there be any question that these injuries were literally 'suffered by' the [plaintiffs], though the right to sue on them may have passed to their bankruptcy estates by operation of the bankruptcy laws.") (citing *Citizens for a Better Environment*, 523 U.S. at 103); *accord Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004) (plaintiff that filed for bankruptcy after cause of action accrued satisfied Article III standing requirement even though her claim for tax refund belonged to bankruptcy estate); *Ensley*

---

[5] With respect to Article III injury and redressability, the Court notes that a person who has declared Chapter 7 bankruptcy can receive money at the conclusion of the bankruptcy process under the provisions of the Bankruptcy Code if there are sufficient funds—*e.g.*, if substantial recoveries came in via a successful lawsuit. *See* 11 U.S.C. § 726(a)(6) (providing that, after various other claims are satisfied, property of the bankruptcy estate in the Chapter 7 bankruptcy is distributed to the debtor).

*v. Cody Resources, Inc.*, 171 F.3d 315, 319 (5th Cir. 1999) (shareholder had Article III standing to sue for diminution in share value even though state law imposed prudential limitation on shareholder's "standing" to sue).[6]

Even if a plaintiff has Article III standing, prudential considerations may limit a plaintiff's ability to invoke federal jurisdiction. *See, e.g., Warth*, 422 U.S. at 499-500. Prudential standing is comprised of both judicially-created limitations, such as the prohibition on third-party standing, *see id.*, and statutorily-imposed limitations, such as the Rule 17(a) requirement that suits must be maintained by the real party of interest.[7]

---

[6] Plaintiff cites a couple of district court cases, *West v H&R Block Tax Serv., Inc.*, No. 03 C 4289, 2003 WL 22995158 (N.D. Ill. Dec. 15, 2003), and *Ball v. Nationscredit Fin. Servs. Corp.*, 207 BR 869 (N.D. Ill. 1997), in which district courts dismissed cases for lack of standing in response to defense objections when a plaintiff, who was in bankruptcy, tried to assert a claim that was property of the bankruptcy estate. The Court does not believe the results of these cases are inconsistent with the federal appellate precedent discussed above; however, to the extent the cited district court decisions speak of "jurisdiction," it appears that they should be understood to speak in terms of prudential standing and not Article III standing. *See Pershing Park Villas Homeowners Ass'n v. United Pacific Ins. Co.*, 219 F.3d 895, 900 (9th Cir. 2000) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 103 (1998)); *Dunmore v. United States*, 358 F.3d 1107, 1112 (9th Cir. 2004); *Ensley v. Cody Resources, Inc.*, 171 F.3d 315, 319 (5th Cir. 1999); *see also Citizens for a Better Environment*, 523 U.S. at 90 ("'Jurisdiction,' it has been observed, 'is a word of many, too many, meanings'") (quoting *United States v. Vanness*, 85 F.3d 661, 663 n.2 (D.C. Cir. 1996)). Moreover, in the cited district court decisions, the objections as to prudential jurisdiction issues were timely made (not untimely made, as here) and were advanced by defendants, not a plaintiff arguably seeking to avoid any potential consequences of unreasonable inaction. If an Article III standing defect is present, then it obviously cannot be waived; however, if, as the appellate precedent cited and followed herein teaches, Article III standing concerns are satisfied with respect to Plaintiff, the factual distinctions between this case and the other cited district court cases allow all of the results to be reconciled.

[7] Rule 17(a) provides that "[n]o action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest." Fed. R. Civ. P. 17(a).

*See Ensley*, 171 F.3d at 320; *see also Tate v. Snap-On Tools Corp.*, No. 90 C 4436, 1997 WL 106275, at *4 (N.D. Ill. Feb. 11, 1997) (Pallmeyer, M.J.) ("[Constitutional] standing turns on whether the plaintiff can show an injury in fact traceable to the conduct of the defendant and likely to be redressed by the relief sought . . . [while] designation of the real party in interest entails identifying the person who possesses the particular right sought to be enforced."). Objections to standing based upon prudential considerations are waived if not timely raised. *See, e.g., Kelly E.*, 207 F.3d at 934 (collecting precedents); *see also Ensley*, 171 F.3d at 320 (Rule 17(a) objection waived when it was raised too late). Plaintiff's objection relates to prudential considerations, specifically, whether a debtor is a real party in interest under Rule 17(a), not Article III standing. Consequently, this objection was waived when not raised in a timely fashion, at least in with respect to the issue of whether any dismissal must be without prejudice because of the "jurisdictional" grounds asserted by Plaintiff concerning the suit he initiated. Moreover, to the extent necessary to address Rule 17 issues (and to protect other parties than the Plaintiff), this Court could allow the bankruptcy estate to be added or substituted, if that is required to ensure that the Defendant is protected via any dismissal and/or the proper parties are compensated from any putative recoveries that flow through the bankruptcy estate.[8] None of these concerns requires that the dismissal that Plaintiff

---

[8] In this regard, the Court notes that when Mr. Joyce accepted appointment in the bankruptcy court, upon motion of the trustee, as special counsel to pursue the claims that Mr. Cheung filed in this Court, Mr. Joyce signed an affidavit referencing this action and representing that "any future representation . . . in pursuit of the above referenced causes of action will be on behalf of the interest of the Chapter 7 trustee and of the debtor's estate." (D.E. 106, Ex. B.) Accordingly, pursuit of the claims in this case, and pursuant to Judge Gettleman's arbitration order, will enure to the benefit of the estate and none of the Chapter 7 creditors will be prejudiced. The Court further notes that the trustee was well aware of this case, and in fact has expressly benefitted (as has the estate) from the

9

now seeks be without prejudice, especially given the trustee's express and longstanding knowledge of this case, given that Article III standing is satisfied and that what is at issue are belatedly-raised prudential standing issues. *See, e.g., Kelly E.*, 207 F.3d at 934 (collecting precedents); *Ensley*, 171 F.3d at 320.

II. Want of Prosecution

Defendant has moved to dismiss Cheung's claims with prejudice for want of prosecution pursuant to Fed. R. Civ. P. 41(b). (D.E. 94.) The District Court's authority to dismiss in this manner "has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962); *see also id.* at 629 ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of his failure to prosecute cannot seriously be doubted.") (footnote omitted). "Once a party invokes the judicial system by filing a lawsuit, it must abide by the rules of the court; a party can not decide for itself when it feels like pressing its action and when it feels like taking a break because trial judges have a responsibility to litigants to keep their court calendars as current as humanly possible." *James v. McDonald's Corp.*, 417 F.3d 672, 681 (7th Cir. 2005) (quoting *GCIU Employer Ret. Fund v. Chicago Tribune Co.*, 8 F.3d 1195, 1198-99

---

litigation in this Court and orders related thereto. Specifically, in September 2004, all of the Plaintiffs in this case (including Mr. Cheung, and Mr. Russo, as Trustee of the bankruptcy estate of Moses Cheung) moved with Defendants Jeffries and Weinhuff to, *inter alia*, dismiss all claims against Defendants Jeffries and Weinhuff and to confirm a settlement. (*Id.*, Ex. D at 6.) The Court dismissed not only any claims of Mr. Cheung personally, but also any claims belonging to his bankruptcy estate, as represented by the trustee. (*Id.*, Ex. E.) Under that order, the proceeds of the settlement were distributed, and Mr. Cheung's estate received $241,675, before costs and attorney's fees. (*Id.*, Ex. F.)

10

(7th Cir. 1993), and affirming dismissal of case with prejudice, after plaintiff had delayed one year and had not yet initiated arbitration) (further internal quotation marks and citation omitted); *accord, e.g., Morris v. Morgan Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991) (affirming dismissal with prejudice for want of prosecution, after party delayed in initiating arbitration for almost two years after court's ruling that the case was subject to arbitration); *Gonino v. Unicare Life & Health Ins. Co.*, No. Civ.A. 302CV2501G, 2005 WL 608158, at *2-3 (N.D. Tex. Mar. 16, 2005) (dismissing case with prejudice for want for prosecution after party delayed initiating arbitration for nineteen months after court ordered that case was subject to arbitration).

Since dismissal with prejudice is a severe sanction, Seventh Circuit precedent instructs that a court should not dismiss for want of prosecution without giving a plaintiff notice that the Court is contemplating dismissal. *See, e.g., Aura Lamp & Lighting, Inc. v. Int'l Trading Corp.*, 325 F.3d 903, 908 (7th Cir. 2003) (citing *Ball v. City of Chicago*, 2 F.3d 752, 760 (7th Cir. 1993)). It is not clear that such a warning is required when, as in the instant case, the plaintiff is also seeking dismissal and has, for all practical purposes, conceded that he had failed to prosecute the case. (*See generally* D.E. 104 (raising standing objection but otherwise failing to respond to merits of Defendant's motion to dismiss).) In addition, Deloitte long ago expressly and in writing reserved the right to move for dismissal with prejudice of Cheung's claims if he did not proceed to initiate the arbitration process. (*See* D.E. 103, Ex. A at 2 (March 2004 joint status report, in which Deloitte states that, "Cheung has taken no steps to commence an arbitration promptly after Judge Gettleman's order was entered in 2002," and that Deloitte reserved the "right to seek dismissal of this action for want of prosecution").)

Nonetheless, this Court has never expressly warned Mr. Cheung that his case would be subject to dismissal for want of prosecution if he did not initiate the arbitration proceeding. *See Aura Lamp & Lighting*, 325 F.3d at 908. In an abundance of caution, the Court will give Plaintiff one last chance to initiate the arbitration; if he does not do so within twenty-one days of entry of this order, the case will be dismissed with prejudice for want of prosecution.[9]

Finally, the Court does not wish to suggest that any delay in initiating the arbitration has necessarily been an imprudent decision. In the time since this overall case was ordered to arbitration, the other Plaintiffs have spent substantial resources arbitrating their claims against Deloitte. In the eventual twenty-eight day hearing, nearly sixty witnesses testified, including experts, and over 1,200 exhibits were introduced. That arbitration led to a complete rejection of the co-Plaintiffs' claims against Deloitte by a unanimous three-member arbitration tribunal. Under the circumstances, further pursuit of the Cheung claims may (or may not) be imprudent. In either event, if another arbitration is to occur, it must be initiated within twenty-one days of entry of this order, or the case will be dismissed with prejudice for want of prosecution.

---

[9] In this case, the issue of potential prejudice to Defendant because of delay is less significant than it typically would be. Specifically, this case is in the atypical posture of having been the subject of extensive discovery (taken in connection with the arbitration of the other Plaintiffs' unsuccessful claims against Deloitte) and a full hearing concerning the bulk of the allegations at issue. Were the playing field more skewed because of the delay, the Court might not give Mr. Cheung this final chance to initiate the arbitration.

## CONCLUSION

For the reasons stated above, the Court rejects Plaintiff's suggestion that the Court lacks subject matter jurisdiction over Cheung's claims. In order to avoid dismissal with prejudice, Plaintiff must, within twenty-one days, initiate the arbitration as indicated would be done long ago.

So ordered.

*Mark Filip*
Mark Filip
United States District Judge
Northern District of Illinois

Date: *April 20, 2006*